**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSH FRIEDMAN AND STEVEN YUREK, <br><br> *Plaintiffs* <br><br> v. <br><br> ROYALTY SPORTS AND ENTERTAINMENT MANAGEMENT GROUP, LLC AND TZVI GROSSMAN, INDIVIDUALLY <br><br> *Defendants* | Docket No. 2:20-cv-1994 <br><br> **PLAINTIFFS' ORIGINAL COMPLAINT** |

Josh Friedman ("Friedman") and Steven Yurek ("Yurek") (collectively, "Plaintiffs"), by and through counsel, THOMPSON & SKRABANEK, PLLC, respectfully bring this Complaint against Defendants Royalty Sports and Entertainment Management Group, LLC ("RMG") and Tzvi Grossman ("Grossman") (collectively, "Defendants"), and in support thereof allege as follows:

## NATURE OF CASE

1.      This is a civil action for damages for Defendants' many violations of Plaintiffs' rights guaranteed by: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a), (ii) the overtime provisions of New York Labor Law ("NYLL"), NYLL § 160, (iii) the minimum wage provisions of the FLSA and NYLL, NYLL § 652; (iv) the NYLL's requirement that employers furnish employees with wage statements containing specific categories of accurate information on each payday, NYLL § 195(3); (v) the NYLL's requirement that employers furnish employees with wage notices containing specific categories of accurate information at hire, NYLL § 195(1); and (vi) any other claims that can be inferred from the facts set forth herein.

2.      Plaintiffs worked for Defendants—a sports management company and its President/CEO—in various capacities at different and partially overlapping periods. As described further below, Defendants willfully failed to pay Plaintiffs both minimum wages and overtime wages lawfully due under the FLSA and the NYLL.

3.      Additionally, Defendants violated the NYLL by failing to provide Plaintiffs with accurate wage statements on each payday or with any wage notices at the time of hire.

## JURISDICTION & VENUE

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et seq*. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York Law.

5.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

6.      At all times during the relevant period, Plaintiffs worked for Defendants in New York and were "employees" entitled to protection as defined by the FLSA and the NYLL.

7.      At all relevant times, Defendant RMG is and was a New York limited liability company with its principal place of business located in Rockland County, New York at 66 Remsen Avenue, Monsey, New York 10952.

8.      At all relevant times, Defendant Grossman is and was the President and CEO of RMG. In that role, Grossman controlled the terms and conditions of employment for all of RMG's employees in that he hired and fired all employees, supervised and directed all employees' work, determined the rate and method of wage payments to all employees, and was responsible for

maintaining all employment records. To that end, Grossman hired and managed Plaintiffs, set their pay and schedules, and generally directed and controlled the course and means of Plaintiffs' work.

9.  At all relevant times, both Defendants were "employers" within the meaning of the FLSA and NYLL. Additionally, during all relevant times, RMG was and is engaged in interstate commerce.

10.  At all relevant times, Defendants were aware of the requirements to pay Plaintiffs an amount equal to the rate of minimum wage, plus one-and-one-half times Plaintiffs' respective regular rates of pay for all hours worked each workweek above forty, yet Defendants purposefully and willfully chose not to do so.

11.  Upon information and belief, Defendants have a pattern and practice of willfully failing to pay their employees the appropriate wages owed by law. By way of example, and not by limitation, attached hereto as Exhibit A is a true and correct copy of an email from Yurek to Grossman on March 5, 2018 demanding minimum wage for Yurek's uncompensated labor. These wages were never paid.

12.  In short, Plaintiffs are victims of Defendants' practice of willfully refusing to pay their employees minimum wage or overtime compensation for all hours worked.

## BACKGROUND FACTS

13.  RMG is a sports management company and agency that manages professional athletes.

14.  Grossman is its President and CEO, who in that role manages and oversees all of RMG's operations, including with respect to all of its employees, on a daily basis.

### A.  Facts Relevant to Yurek's Claims.

15.  Defendants hired Yurek on or around November 27, 2017. Yurek remained an

employee of Defendants through around March 2, 2018. During this period, Yurek was in the process of obtaining a Master's degree in Global Sports Business from Rutgers University.

16.    Yurek's job duties included, but were not limited to: developing press releases to be submitted to the media; alerting news media to athletes' appearances; developing a partnership deck for potential new clients; developing an RMG sponsor list; prospecting (via email and telephone calls) and engaging in conversations for potential new clients; developing social media posting guides for athletes; assisting with hiring and supervision of at least one (1) intern; overseeing daily work as necessary; handling in-kind donation forms; and other various duties as requested by RMG and Grossman.

17.    Defendants improperly deemed Yurek an "intern" despite giving him the duties of an employee.

18.    Yurek was an employee under the prevailing "primary beneficiary test" to determine whether an intern or student is, in fact, an employee under the FLSA.

19.    The "economic reality" of Yurek's relationship with Defendants shows that Defendants were the "primary beneficiary" of the relationship.

20.    Defendants did not pay Yurek's tuition.

21.    Yurek did not receive any credit from his university for his employment with Defendants, nor did Defendants even attempt to provide Yurek with any credit.

22.    Yurek worked for Defendants in exchange for the promise of compensation.

23.    Yurek's position did not provide training that would be similar to that which would be given in an educational environment, such as the clinical and hands-on training provided by educational institutions.

24.    Yurek's position was not tied to Yurek's formal education program by integrated

coursework or the receipt of academic credit.

25.     Yurek's position was not tailored to accommodate any academic commitments by corresponding to the academic calendar.

26.     The duration of Yurek's position was not limited to a particular period of beneficial learning.

27.     Yurek's work was largely identical to and displaced the work of comparable paid employees, without providing significant educational benefits to Yurek.

28.     Defendants willfully failed to provide Yurek with any form of wage notice at his time of hire, nor did Defendants ever provide Yurek with any wage statements at any time during his term of employment.

29.     Yurek averaged at least thirty hours per week while employed by Defendants, and sometimes more. In some weeks, Yurek occasionally worked overtime if needed. On these weeks, though Defendants never explicitly requested Yurek to work "overtime," he performed tasks upon Defendants' request which exceeded forty hours of work for the week.

30.     In sum, Defendants paid Yurek a total of $194 during the time he worked for them.

31.     When Yurek separated from Defendants, he demanded to be paid at least minimum wage for his labor. *See, e.g.,* Exhibit A. Defendants refused to pay Yurek anything and willfully refused to pay him minimum wage.

32.     Upon information and belief, Yurek is owed at least $10,000 in minimum wages and overtime payments under the NYLL. Yurek is owed at least an additional $10,000 for Defendants' willful failure to provide him wage notices and wage statements.

### B.     Facts Relevant to Friedman's Claims.

33.     Defendants employed Friedman from 2015 through February 2020. Nearly all of

Friedman's work for Defendants took place in Nassau County, New York.

34.     From 2015 to 2017, Friedman was in the process of obtaining a degree in Marketing Management. Upon obtaining his degree, Friedman enrolled in NYU's Shack Institute of Real Estate to obtain a Master's Degree. Unfortunately, his time at the program was cut short because of the amount of his work and responsibilities accruing at RMG.

35.     Similarly to Yurek, Defendants deemed Friedman an unpaid "intern" until September 2017, when they formalized his employment status. Thereafter, Defendants paid Friedman $1,000 per month from September 2017 to January 2018 and $1,500 per month from February 2018 until he left the company.

36.     Before September 2017, Defendants improperly deemed Friedman an "intern" despite giving him the duties of an employee.

37.     Friedman was an employee under the prevailing "primary beneficiary test" to determine whether an intern or student is, in fact, an employee under the FLSA.

38.     The "economic reality" of Friedman's relationship with Defendants shows that Defendants were the "primary beneficiary" of the relationship.

39.     Defendants did not pay Friedman's tuition.

40.     Friedman did not receive any credit from his university for his employment with Defendants, nor did Defendants even attempt to provide Friedman with any credit.

41.     Friedman worked for Defendants in exchange for the promise of compensation.

42.     Friedman's position did not provide training that would be similar to that which would be given in an educational environment, such as the clinical and hands-on training provided by educational institutions.

43.     Friedman's position was not tied to Friedman's formal education program by

integrated coursework or the receipt of academic credit.

44.    Friedman's position was not tailored to accommodate any academic commitments by corresponding to the academic calendar.

45.    The duration of Friedman's position was not limited to a particular period of beneficial learning.

46.    Friedman's work before September 2017 was largely identical to and displaced the work of comparable paid employees, without providing significant educational benefits to Friedman.

47.    Similarly to Yurek, Defendants willfully failed to provide Friedman with any form of wage notice at his time of hire, nor did Defendants ever provide Friedman with any wage statements at any time during his term of employment.

48.    After Friedman's improper "internship," Friedman's job duties included, but were not limited to: managing RMG's roster of NBA & NFL players; day-to-day operations for all clients; assisting with NBA & NFL recruitment; creating, directing, and managing RMG marketing events, summer camps, and charity work; negotiating marketing deals; bookkeeping and bill paying;  supervising all "interns"; drafting press releases; managing TV crews, beat writers, and media inquiries; building a company deck; creating a strategic marketing plan for the company; managing clients' social media profiles; managing clients' family and financial affairs; web development; and other various duties as requested by RMG and Grossman.

49.    Friedman was an extremely diligent, dedicated, hard worker. On average, from September 2017 onward, Friedman worked approximately eighty hours per week for Defendants. Prior to September 2017, Friedman worked approximately forty hours per week for Defendants.

50.    As Friedman worked longer and harder hours for Defendants, he continually took

on greater responsibilities for Defendants. Defendants constantly praised Friedman for his dedication and hard work and—repeatedly over a period of several years—promised Friedman he would be rewarded for his efforts.

51.    Defendants earn revenue primarily by signing athletes to endorsement contracts. Friedman was instrumental in helping land numerous large, lucrative contracts for Defendants, for which Defendants repeatedly promised Friedman 50% of the revenue earned. At the time Friedman left his employment with Defendants, Defendants owed Friedman at least $10,250 in unpaid endorsement royalties.

52.    Excluding Friedman's completely uncompensated labor before September of 2017, Defendants paid Friedman just $42,500 for the entire term of his employment. But minimum wage for a 40-hour work week over this period under NYLL entitles Friedman to $54,720, which constitutes at least a $12,220 intentional underpayment (notwithstanding Friedman's additionally uncompensated labor pre-dating September 2017).

53.    Additionally, Friedman was not paid any overtime between September of 2017 and February of 2020 when he left his employment with Defendants. Pursuant to NYLL, Friedman is entitled to at least $82,080 in uncompensated overtime wages for this period.

54.    Friedman is also owed at least an additional $10,000 for Defendants' willful failure to provide him wage notices and wage statements.

## FIRST CLAIM FOR RELIEF[1]
### *Unpaid Minimum Wages Under the NYLL Against All Defendants.*

55.    NYLL § 652 prescribes a minimum wage that employers must pay their employees for all hours worked.

---

[1] Plaintiffs incorporate by reference the preceding paragraphs for all causes of action pleaded herein.

56.     As described above, Defendants are employers within the meaning of the NYLL, and Plaintiffs are employees within the meaning of the NYLL.

57.     Defendants did not compensate Plaintiffs at least the minimum hourly rate required by the NYLL for all hours worked.

58.     Plaintiffs are entitled to the minimum rate of pay required by the NYLL for all hours worked.

59.     Plaintiffs are also entitled to liquidated damages, interest, and attorney's fees for Defendants' willful violations of the NYLL's minimum wage provisions.

## SECOND CLAIM FOR RELIEF
### *Unpaid Overtime Under the FLSA Against All Defendants.*

60.     The FLSA, 29 U.S.C. § 207(a), requires employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for all hours worked exceeding forty in a workweek.

61.     As described above, Defendants are employers within the meaning of the FLSA, and Plaintiffs are employees within the meaning of the FLSA.

62.     Also as described above, Friedman consistently worked in excess of forty hours in a workweek, and Yurek occasionally worked in excess of forty hours in a workweek, yet Defendants failed to ever pay either of them any overtime payments as required by the FLSA's overtime provisions.

63.     Defendants willfully violated the FLSA.

64.     Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times New York's minimum wage for the relevant period.

65.     Plaintiffs are also entitled to liquidated damages, interest, and attorney's fees for Defendants' willful violations of the FLSA's overtime provisions.

## THIRD CLAIM FOR RELIEF
### *Unpaid Overtime Under the NYLL Against All Defendants.*

66.     NYLL § 160 requires employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for all hours worked exceeding forty in a workweek.

67.     As described above, Defendants are employers within the meaning of the NYLL, and Plaintiffs are employees within the meaning of the NYLL.

68.     Also as described above, Friedman consistently worked in excess of forty hours in a workweek, and Yurek occasionally worked in excess of forty hours in a workweek, yet Defendants failed to ever pay either of them any overtime payments as required by the NYLL's overtime provisions.

69.     Defendants willfully violated the NYLL.

70.     Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times New York's minimum wage for the relevant period.

71.     Plaintiffs are also entitled to liquidated damages, interest, and attorney's fees for Defendants' willful violations of the NYLL's overtime provisions.

## FOURTH CLAIM FOR RELIEF
### *Failure to Furnish Proper Wage Statements Against All Defendants.*

72.     NYLL § 195(3) requires employers to furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion the employer pays wages to the employee.

73.     As described above, Defendants, on each payday, failed to furnish Plaintiffs with wage statements on each payday, let alone ones that accurately contained all of the criteria required under the NYLL.

74.    Pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiffs in the amount of $250 for each workday after the violation occurred, up to a statutory cap of $5,000.

## FIFTH CLAIM FOR RELIEF
### *Failure to Furnish Proper Wage Notices Against All Defendants.*

75.    NYLL § 195(1) requires employers to provide employees with a wage notice at the time of hire containing accurate, specifically enumerated criteria.

76.    As described above, Defendants failed to provide Plaintiffs with any wage notices at hire, let alone ones that accurately contained all the criteria required under the NYLL.

77.    Pursuant to NYLL § 198(1-b), Defendants are liable to Plaintiffs in the amount of $50 for each workday after the violation occurred, up to a statutory cap of $5,000.

## SIXTH CLAIM FOR RELIEF
### *Breach of Contract Against RMG as to Friedman.*

78.    RMG and Friedman had a valid, binding contract regarding Friedman's entitlement to royalties from Defendants' contracts for signed endorsement deals.

79.    Though they were *de minimis*, RMG recognized the legitimacy of this contract by making occasional payments to Friedman under the contract.

80.    RMG breached the contract by failing to pay Friedman at least $10,250 for closed, signed endorsement deals with which Friedman materially assisted at the time Friedman left Defendants' employment.

## DEMAND FOR JURY TRIAL

81.    Pursuant to FRCP 38, Plaintiffs demand a trial by jury in this matter.

## PRAYER FOR RELIEF

Plaintiffs demand judgment against Defendants as follows:

a.      A judgment declaring the practices complained of herein are unlawful and in willful

violation of the aforementioned federal and New York laws;

b.      At least $100,000 in damages, which consist of Plaintiffs' actual damages sustained

as a result of Defendants' illegal conduct and include all unpaid wages, any shortfall

between wages paid and those due under the law, liquidated damages, and any other

statutory penalties as recoverable under the FLSA and the NYLL;

c.      Plaintiffs' reasonable attorney's fees, as well as their costs and disbursements

incurred in connection with this action, including expert witness fees and any other

costs;

d.      Pre-judgment and post-judgment interest as provided by law; and

e.      Such other relief to which Plaintiffs are justly entitled.

Dated: May 1, 2020
       New York, New York

Respectfully submitted,

By: _____

J.R. Skrabanek, Esq.
THOMPSON & SKRABANEK, PLLC
42 W. 38th Street, Suite 1002
New York, NY 10018
(646) 568-4280
jrs@ts-firm.com

ATTORNEYS FOR PLAINTIFFS